ARK. POWER & LIGHT CO. *v.* E. L. LANTRIP

5-5266                                                    454 S. W. 2d 652

Opinion delivered June 8, 1970

*House, Holmes & Jewell,* for appellant.

No brief filed for appellee.

CARLETON HARRIS, Chief Justice. Arkansas Power and Light Company, appellant herein, condemned a right-of-way 462.9 feet in length, and 40 feet in width running parallel to and near the South boundary line of a 40 acre tract owned by E. L. Lantrip, appellee herein. This right-of-way is situated in the Southwest corner of the tract, and, beginning at a point about 25 feet north of that corner, runs easterly 462.9 feet. The taking also includes two strips of right-of-way, one 75 feet in length and 16 feet in width and the other 40 feet in length and 16 feet in width abutting against the larger taking for purposes of locating guy wires. The entire taking for this distribution line consisted of slightly less than one-half acre. On trial, the jury returned a verdict in favor of Lantrip in the amount of $7,000.00, and from the judgment entered in accordance with said verdict, appellant brings this appeal. For reversal, two points are asserted, first, that the trial court erred by refusing to give appellant's requested instruction No. 10, and second, the verdict was not supported by substantial evidence and was excessive. We proceed to a discussion of each point.

Appellant offered the following instruction, which was refused by the court:

"Evidence has been introduced with respect to sale of other lands made in the general vicinity of the lands involved in this case. That evidence should be accorded the weight, if any, which you think it should have in determining the market value of the tract or tracts of land with which you are concerned, as of the date of taking.

"In weighing that evidence you should take into

consideration the facts and circumstances of such sales, as shown by the evidence, the relationship of the parties to such sales, the location, accessibility and quality of the lands so sold as compared to the location, accessibility and quality of the lands involved in this case, and any other established factors of similarity or dissimilarity, as shown by the evidence."

We do not agree that the refusal to give this instruction constituted error. It is argued that in *Baker v. City of Little Rock,* November 3, 1969, 446 S. W. 2d 253, this court approved the instruction offered; that assertion is correct, but the circumstances were different from the case at bar. Of course, in the first place, the contention there was that the giving of the instruction constituted error, and we held the instruction to be proper under the evidence offered. However, we pointed out that this instruction was offered relative to direct evidence of comparable sales, rather than hearsay evidence of comparables, and Mr. Block described in- detail a sale handled by him which, in his opinion, was highly comparable. We said,

"Evidence of comparable sales and comparable values given by those having firsthand information may be introduced as substantive evidence going to the value of the subject lands. * * * * (citing cases) Instructions 13 and 14 were proper, at least insofar as they applied to any comparables not based on hearsay; whether they are otherwise applicable is not before us because a specific objection was not made."

The question is now before us, but we do not agree with appellant's position. Let it be remembered that evidence of comparables given by an expert based on hearsay evidence, is not evidence of just compensation to be considered by the jury, but rather, such evidence is only to show the basis of the expert's opinion, and to aid in enabling the jury to better determine the weight that should be given his evidence. In Volume 5, Nichols' The Law of Eminent Domain,

§ 21.3, there is a discussion of this subject, including the following comment:

"Upon the question whether the price paid at voluntary sales of land similar to that taken at or about the time of the taking is admissible as independent evidence of the value of the land taken there is a conflict of authority. It is held in most jurisdictions that such evidence is admissible. * * * *

"Such evidence is capable of direct proof; it has considerable probative value. * * * *

"The price paid for similar land, when admitted as independent evidence of value, must be proved with as much formality as any other material fact, and *witnesses are not permitted to testify in regard to sales unless they were parties thereto,*[1] or were the brokers who effected the sale, or in some other manner *knew*[1ᵃ] the price paid of their own knowledge, and not as a matter of common rumor or hearsay."

In the case now before us, there was no evidence by any person purporting to have firsthand knowledge of sales which were considered comparable.

It follows that there is no merit in this contention.

Nor do we agree that there is no substantial evidence to support the verdict. Following the testimony of the landowner, Mr. D. Thomas Cox, a realtor for 22 years in Pulaski County, testified on behalf of the landowner. Mr. Cox stated that he was familiar with property values in that particular area prior to March 1967, (date of the taking) and the 40 acres owned by Lantrip fronted on the east on the expressway access road of Jacksonville, and he valued the property (before

---

[1] & [1ᵃ] Emphasis supplied.

the taking) at $160,000.00. Cox, who was apparently looking at a map,[2], stated:

"* * * this would be an ideal road for the subdivision going over to the access road of the expressway and commercial could be used on the access road and *this*[2a] would be prime for a residential development. Of course, *this*[2b] has affected the property and damaged it. I would say that part affected by *this*[2c] — putting this easement through there, the right of way —has reduced the value of the over-all 40 acres, is that what you want?"

Appellant complains that Cox does not use the words "fair market value", and that he testified to- the overall value of the entire 40 acres after the taking, rather than the value of the remainder after the taking. This, says appellant, renders his testimony in this regard completely incompetent. It is true that the witness did not use the exact phrase mentioned by appellant, but there is no magic in those particular words. The important consideration is whether Mr. Cox actually used the proper approach. For instance, when he said -that the entire forty was worth $160,000 before the taking, and the forty was worth $150,000 after the taking, he was certainly, in effect, giving that as the value of the "remainder". After all, this was not a taking in fee simple, but was only the condemnation of a right-of-way easement. Lantrip still owned the entire forty. It might be added that the jury was properly instructed relatives to before and after values.

Mr. Cox stated that the best use of the property on Lantrip Road was residential, and that the best use for that on the access road would be as commercial property. He mentioned a subdivision directly west of

---

[2] The language used by the witness very clearly conveys this impression. For instance, he stated, "well, this part is only affected. It wouldn't affect the whole 40 acres."

[2a, b, c] The italicized words are confusing since the transcript contains no plat or map.

the Lantrip tract and stated that the subdivision was served with all utilities except sewer. He said it had been cleared, contained streets, and that a new house, built within the last six months, was within 200 feet of the Lantrip acreage. He added:

"Well, I think by the idea of the guy wires or highlines being there it affects this property to that extent. Not only that half acre but I think it affects property within a hundred or two hundred feet of it. It depreciates the value of that whole strip of land. And on each side it will. . . on the north side it will affect the value of that particular property and then to put a 50 foot street which is the minimum requirement by the county and the city and the Planning Commission, to put a 50 foot street there, then he's going to have to acquire 25 feet south of him to put in a road through there to the access road of the Jacksonville Highway, which would come over his property there."

Appellant apparently questions the qualifications of Mr. Cox, stating that Cox was not a Senior Real Estate Appraiser, and that Cox was not a member of the American Institute of Real Estate Appraisers,[3] while its own expert, William Payne, was a Real Estate Appraiser, President of a mortgage company, a graduate Civil Engineer from the University of Arkansas, a graduate of various real estate appraiser's courses, a graduate of the School of Mortgage Banking at Northwestern University, a Senior Member of the Society of Real Estate Appraisers, and a member of the American Institute of Real Estate Appraisers and held a MAI designation.[4]

It may be that, educationally speaking, Mr. Payne was better qualified than Mr. Cox, but it is not our function to determine which witness was better qualified, or which better demonstrated his knowledge of

[3] Cox had attended an appraiser's school.

[4] We do not discuss Payne's testimony inasmuch as we are only concerned with whether there was substantial evidence offered by appellee.

the property under discussion. That is a jury function, and we have no right to set aside its opinion except for legal reasons.

Appellant mentions that Cox did not offer any comparable sales in support of his opinion, but this was a matter that could have been easily handled on cross-examiation. In *Sunray DX Oil Co.* v. *Thurman,* 238 Ark. 789, 384 S. W. 2d. 482, we said:

"Appellant contends that the witnesses should have testified more specifically, and in more detail, as to how they reached these figures, but these facts could have been ascertained on cross-examination. Counsel did not interrogate Thurman on this point, and did not cross-examine O'Bier at all."

Likewise, in *Urban Renewal Agency of Harrison* v. *Hefley,* 237 Ark. 39, 371 S. W. 2d. 141, this court said:

"The testimony of Carr, another real estate dealer, is challenged on the ground that he gave no basis for his expert opinion. As we pointed out in *Ark. State Highway Comm.* v. *Johns,* 236 Ark. 585, 376 S. W. 2d. 436, that opinion was admissible on direct examination. Counsel might have attempted to discredit the witness by showing through cross examination that he had made no reasonable basis for his conclusions, but no such effort was made."

In the case before us, on cross-examination, counsel for appellant suggested that Cox had not used the proper method in arriving at his conclusions. When the witness inquired of counsel what method he should have used, the attorney replied, "comparable sales method". The record then reveals the following:

"A. I've got some comparable sales. If you want them. You haven't asked me that.

Q. No, I didn't ask you.

A. Do you want some?

Q. What I'd like to know is just the factors that you considered on this property?

A. I've got to go into some comparable sales now if you want me to.

COUNSEL FOR APPELLANT

I believe that's all I have."

Appellant is hardly in a position to complain about the lack of comparable sales used by Cox when we consider the testimony just quoted.

Nor can we agree that the verdict was excessive. In *Arkansas State Highway Commission* v. *Sargent,* 241 Ark. 783, 410 S. W. 2d. 381, the same conention was made, but this court said that if the testimony had any reasonable basis, though it might have seemed questionable, the jury was entitled to accept the valuations, and we could not say that the verdict was excessive, "being well within the range of damages testified to by witnesses for appellees".

Finding no reversible error, the judgment is affirmed.

It is so ordered.